GReenf. J.
delivered the opinion of the court.
The case shows that two grants were issued by the State of North Carolina in 1794, to Elizabeth W. Lewis for 2500 acres each, calling for land in what is now the county of Lincoln. Elizabeth W. Lewis intermarried with W. C. C. Claiborne, and died in 1804, leaving no issue. The complainants, and the defendant Mary Ann Lewis are her legal representatives. In the year 1815 an execution was issued against Wm, C. C. Claiborne and levied upon two tracts of *116 ]an¿¡ jn Lincoln county, supposed to be covered by the aforesaid grants, and the interest of said Claiborne in said lands was sold by the sheriff and purchased by the defendant Wm. -g Lewis and Charlotte Lewis for the sum of $100. It was ascertained after this sale that the lands called for in these grants could not be identified, and upon the production to the commissioners of the- affidavit of the surveyor, of the sheriffs deed and the grants, certificates were issued to’ the said Wm. B. Lewis and Charlotte Lewis, on the 23d December 1815, for said 5000 acres, which- were neverl'ocated- by them-, hut which in 1816 they sold for forty cents per acre, amounting to $2000. The bill prays that the defendant Wm. B. Lewis account for the proceeds of the warrants. The answer submits to an account for the one half, Charlotte Lewis having received the other half, and states that the defendant would have paid complainants without suit had he been applied to on the subject.
The cause came on to be heard upon the bill, answers and replication, when the chancellor directed that the defendant, Wm. B. pay to the complainants one fourth of the price of the said warrants, and to the other defendant, Mary Ann Lewis, another fourth part after deducting from each part one fourth of the expenses incurred by the defendant in procuring said certificates, and that the clerk and master take an account and ascertain the expenses, and report the balance due the complainants with interest from the time the warrants were sold, up to the time of taking the account. The clerk and master reported the one fourth of the land warrants sold in 1816, to be $500, and one fourth part of the expenses to be $31 12^ which being deducted left $468 87£, upon which sum interest was calculated up to the time of taking the account. In examining witnesses before the clerk and master, it appeared that Wm. C. C. Claiborne did not die till 1817, and that Elizabeth W. his wife gave birth to a living child, which died before its mother. It is conceded on all hands that Wm. B. Lewis and Charlotte Lewis acquired no title to obtain for themselves the . certificate warrants in question, in virtue of their purchase at the execution sale, but it is contended for the defendant that this question having been adjudicated upon by the commissioners, before whom he appeared in a charac *117 er which he really sustained, that of purchaser at execution . . . . sale, and the certificates having been issued to him, this court has no jurisdiction to reverse that decision and to adjudge the right in-favor of complainants. In support of this position, the case of Lloyd vs. Lord Trimblestown, 6 Cond. Eng. Ch. Rep. 152, is cited and relied on. That was an award of the British commissioners under the conventions of 1814 and 1815, between the British and French governments, and the act of Parliament 59 Geo. III. c 31, relative thereto. The vice chancellor in giving his judgment observes; “My opinion therefore is that this is a case in which the award of the commissioners is final so far as the jurisdiction of the court is concerned. For I think that except in cases of trust or fraud, it was intended that the adjudication of the commissioners should be final.”
Whether this be the doctrine of the court of chancery in England or not, it is perhaps not necessary now to enquire. It may be remarked, however, that Lord Eldon’s observation in Hill vs. Reardon, seems inconsistent with the principle above laid down. In that case, 2 Rus. 629, he says: “If the French government had paid 100,000 francs to B as entitled under the will of A, and it turned out that C D was the person actually entitled under that will, could it be said that the jurisdiction of this court was excluded in such a case.”
But be this question settled as it may in that country, the contrary doctrine is held by the supreme court of the United States in Comegys vs. Vasse, 1 Peter’s Rep. 212, and by this court in Pinson vs. Ivey, 1 Yer. Rep. 296. The late chief justice of this court it is true, dissented in the latter case and'delivered an opinion in accordance with the position now assumed by counsel. But the argument of the same counsel, sustained as it was by a majority of the court, settled the question against his opinion.
That decision has been followed ever since, and many cases have been determined upon the authority of it, so that it may be regarded as the settled law of this court, that the issuance of a certificate land warrant to a person not entitled thereto, is not conclusive upon the rights of the person actually entitled. 1 The act of 1807, e 2, empowered the com *118 m’ss*oners to tiecide upon the validity of the claim which might be presented for adjudication, but his decision and the issuance of the certificate is not conclusive upon persons , ... , ^ . having conflicting claims, and the court of chancery has jurisdiction to examine into the execution of the «power raised by that act.
2. It is next contended that tho complainants have not stated their case in the bill in such way as to show .they were entitled under the act of 1807, to certificates in this case.
The bill states that the lands were “lost by die interference of an older and better title in one Ezekiel Norris, or upon some other such like cause.” The Gth\ section of the act makes provision for those whose lands may be “taken by tile interference of a grant of better title.” But it is contended that there may have been an older and better title, and still that it may not be a grant of better title. We do not perceive the possibility which the defendants’ counsel imagines. It is stated in the bill that the complainants claim by virtue of grants to Elizabeth W. Lewis. Now a title that is older and better than her grants, -must be by grant. If, as is contended, a title were acquired by virtue of the statute of limitations, then, the possession operating in connexion with a deed only, to give him the title must be younger than her grant, or .it would not be founded upon a grant. But the bill says Norris’ title was older as well better, consequently it must have been by grant of better title. But it was not necessary the bill should do more than state the complainant’s right, and that defendant had obtained the warrants. It calls upon the defendant to disclose the manner in which he obtained them, and his answer sets forth the exact manner in which the land was lost. He says it could not be identified. The 7th section of the act makes provision for this case, so that if the statement in the bill had been wholly defective, still according to the case of Rose vs. Mynatt, 7 Yer. Rep., the decree might have been made upon the answer.
3. It is insisted that the statute of limitations operates as a bar to the relief which is sought. The answer does not reiy upon the statute of limitations and therefore the defendant cannot now insist upon it. The case of Kaigler vs. Miles, *119 (Mar. & Yer.) has no apnlication here. This is not a suit for specific property, the possession of which confers a title. In a case like this the statute operates only on the remedy, and in such case according to all the books,itmuslbepleadedor the party cannot avail himself of it. The case of Owen's heirs vs. Stubblefield and others, (manuscript,) decided at Sparta in 1833, was like this. The court there held that the parties could not have the benefit of the statute of limitations, because they had not relied upon it in their answers. But the answer acknowledges the debt and states that the defendant is willing to account and would have paid complainants without suit had application been made. There is no pretence therefore for the application of the statute of limitations.
4. It is next insisted that as the evidence which was taken before the clerk and master, shows that Win. C. C. Claiborne was tenant by the cr.rtosy, and that he did not die till 1817, the calculation of interest is erroneous in commencing one year and a half earlier than it should have done. There is no error on this point, in the master’s account, the answer stated the warrants to have been sold early in 1816, and the chancellor’s decree fixed upon that time as the period from which interest should be calculated. The master was bound to conform to the decree. His duties consisted in carrying its directions into effect. If from the evidence before him he had presumed to state the account differently from the manner directed in the decree, though in itself correct, the account so stated would have been erroneous and liable to exception. In the case before us, the account is taken in precise conformity to the decree, and is not liable to the exception which is taken. It is equally clear that this court cannot now reverse the decreo of the chancellor upon the evidence in question. If this could bo done, there are few decrees that could stand where any matter is referred to the clerk and master. The losing party would often be able by testimony before the clerk to change the complexion of the case as it appeared before the chancellor. lie would thus get the benefit of a rehearing by indirection, which he could not have obtained directly. For it is clear in this case that if a petition for rehearing had been presented to the chancellor with a view to *120 iet in the evidence upon which it is now sought to reverse his 1 ° the application would have been refused. . Besides the opposite party is not expecting any such evidence. He comes to investigate the matters of account referred to the master upon the principles of the decree, and would be taken by surprise if this evidence were now noticed. It cannot therefore be looked at for any purpose, and ought not to have been taken by the master. He was authorised to take no testimony except that which was relevant to the matter referred to him in the decree. Any other evidence is taken as much without authority, and is as little to be regarded as though it were found in voluntary affidavits, sworn to before a justice of the peace.
We think there is no error in the decree, and order it to be in all things affirmed.
Decree affirmed-